[Civ. No. 12219. Second Appellate District, Division Two.—August 11, 1939.]

WILLIAM DIETERLE et al., Appellants, v. YELLOW CAB COMPANY (a Corporation) et al., Respondents.

A. Ronald Button and Samuel V. Cornell for Appellants.

Harry B. Ellison, J. L. Ronnow and Reginald I. Bauder for Respondents.

THE COURT.—In the evening of December 9, 1937, plaintiffs were passengers in a taxicab driven by defendant Nave and owned by defendant corporation, which collided with a Plymouth automobile driven by defendant La Force. They seek to recover damages for injuries received in the collision. Defendant Agnes Whelan was made a defendant under allegations that she was the owner of the Plymouth car. When both sides rested the trial court granted a motion for a directed verdict as to defendant Nave and the taxicab company. The jury returned verdicts in favor of defendant Whelan and against defendant La Force in the sums of $13,922.67 for plaintiff William Dieterle, $13,875.86 for plaintiff Charlotte Dieterle, $1556.17 for plaintiff Hagenbruch and $570 for plaintiff Zeisler. Plaintiffs have appealed from the judgments in favor of defendants Whelan, Nave and the taxicab company. The briefs contain no arguments as to the appeal from the judgment in favor of defendant Whelan and therefore it will not be discussed herein.

 The power of the trial court to direct a verdict is limited and has been well defined. It may direct a verdict only when, disregarding conflicting evidence and giving plaintiffs' evidence all the value to which it is legally entitled, and indulging every legitimate inference which may be drawn therefrom, no evidence of sufficient substantiality to support a verdict in favor of plaintiffs, if given, may be found. (*Mairo v. Yellow Cab Co.*, 208 Cal. 350 [281 Pac. 66].) Although the evidence was conflicting and would doubtless have supported a verdict in favor of Nave if the jury had rendered

such a verdict upon proper instructions of the court, we must, nevertheless, in view of the nature of this appeal and in accordance with the rule above set forth, consider the evidence in the light most favorable to plaintiffs.

The accident occurred at about 8 o'clock in the evening at the intersection of Beverly Boulevard and Lucerne Street in the city of Los Angeles. A drizzling rain was falling and the surface of the street was wet. The night was dark but the street was lighted. Beverly Boulevard is what is known as a "through street". A stop sign had been placed at the intersection requiring cars approaching Beverly Boulevard from Lucerne Street to stop before entering the intersection. Defendant Nave was driving the taxicab in an easterly direction on Beverly Boulevard and defendant La Force was driving the Plymouth car in a northerly direction on Lucerne Street. The collision occurred in the southeasterly quarter of the intersection, about midway between the northerly and southerly lines of the quarter of the intersection and about six or eight feet from its easterly line. The taxicab was struck on its right rear side. Defendant La Force testified that he made a complete boulevard stop and as he was making the stop the taxicab was approximately 100 feet west of the westerly line of the intersection. Thereupon La Force, according to his testimony, proceeded in low gear into the intersection driving at from eight to ten miles per hour. While the Plymouth was standing still the taxicab traveled about forty feet and when the Plymouth was put in motion the taxicab was from fifty to sixty feet from the intersection. La Force estimated the speed at which the taxicab was traveling at from 30 to 35 miles per hour. Defendant Nave testified that when he approached the intersection at 20 miles per hour he slowed his car slightly for a "dip" and went straight across the intersection without applying his brakes; that his right window was down and that he could see the Plymouth car; that he did in fact keep his eyes upon the Plymouth car as he crossed the intersection except for a second; that the Plymouth car was back of the stop signal when he, Nave, was in the intersection. Other witnesses testified that the Plymouth car did not make the required boulevard stop.

Plaintiffs contend that if the jury had been given the opportunity to pass upon the issues as to respondents and had believed the testimony which was most favorable to plaintiffs

a finding that the taxicab was driven at an excessive and negligent speed would have been supported. They also contend that since testimony was received that the Plymouth car did not make the boulevard stop but "came through very fast", and since Nave testified that he observed the Plymouth as he approached and was crossing the intersection, a finding by the jury that he could have avoided the collision by the exercise of due caution would have been supported by the evidence.

Since the plaintiffs were being transported as passengers for a reward by respondents they could rely upon the obligation of the driver of the taxicab to use the utmost care and diligence for their safety. In presenting their case to the trial court they were entitled to the presumption embodied in the doctrine of *res ipsa loquitur*. A case strikingly similar to the one under review is that of *St. Clair* v. *McAlister*, 216 Cal. 95 [13 Pac. (2d) 924]. In that case the plaintiff was a passenger on a bus which stopped at a corner of an intersection and then proceeded slowly across the intersection. A Ford car driven across the intersection at an excessive rate of speed collided with the bus. The plaintiff sued both the driver of the Ford car and the owner of the bus. In affirming the judgment against both of the defendants Mr. Justice Shenk, speaking for the court and referring to the doctrine of *res ipsa loquitur,* uses language which bears so clearly upon the case now before us that a quotation therefrom is especially appropriate: "It was the duty of the carrier to exercise 'the utmost care and diligence for the safe carriage' of the plaintiff (sec. 2100, Civ. Code), and upon showing that she was a passenger and was injured while being carried as such, a presumption of negligence arose, as to which it was incumbent on the carrier to show that it was free from negligence. (*Scarborough* v. *Urgo,* 191 Cal. 341 [216 Pac. 584].) We have no hesitancy in saying that the plaintiff produced proof entitling her to invoke the doctrine contended for by her.

"The evidence offered by the defendant corporation to rebut the presumption consisted in the main in proving the negligence of the driver of the Ford car as to which all parties have agreed. As noted, the driver of the bus was not a witness and his employer offered no proof the effect of which would show that the driver could not have avoided the collision by the exercise of due caution. In the presence of the

presumption it cannot be said as a matter of law that the trial court erroneously applied the doctrine.

"But the defendant corporation insists that the evidence of the conduct in detail of the driver of the Ford car, and particularly that produced by the plaintiff removed the case from the application of the doctrine of *res ipsa loquitur,* and that such proof showed the collision to be due solely to the negligence of the driver of the Ford car. We cannot agree. The plaintiff was confronted with a situation where, in charging concurrent negligence, she was entitled to the application of the doctrine upon proof of her status as a passenger on the bus while the same was being operated by the bus company and the resultant injury from such operation. But as to McAlister, she was bound to prove his negligence by a preponderance of the evidence without the aid of the presumption. This she could not do except by proving the particular acts which constituted such negligence. By producing such proof it should not be held that she waived or forfeited her right to invoke the doctrine as to defendant's carrying her as a passenger."

It will be noted that in the case from which quotation is made, as well as in our own case, the plaintiff offered proof showing in detail the circumstances of the collision. It is pointed out in the St. Clair case that defendant "offered no proof the effect of which would show that the driver could not have avoided the collision by the exercise of due caution". Although defendant Nave was sworn as a witness he did not claim that he applied his brakes or attempted to swerve the taxicab in order to avoid the collision.

The trial court in passing upon the motion for a directed verdict could not, and this court in reviewing the order of the trial court, cannot weigh the evidence for the purpose of determining wherein rests the preponderance of the evidence. That question ordinarily is one for the jury and may not be taken from the jury unless no substantial evidence be presented which, viewed in the light most favorable to plaintiffs, would support a verdict in their favor. Plaintiffs were not bound by the testimony of La Force *in toto* nor were they bound by the testimony of Nave *in toto.* They had the right to depend upon the most favorable portions of the testimony of these and other witnesses together

with all fair and reasonable inferences which could be deduced therefrom. The court erred in directing the verdict.

The judgment as to defendant Agnes Whelan is affirmed. The judgment as to defendants Nave and Yellow Cab Company is reversed.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 9, 1939.