[Civ. No. 15156.   First Dist., Div. Two.   Dec. 11, 1952.]

KATIE ABOUDARA, Appellant v. CITY AND COUNTY
OF SAN FRANCISCO, Respondent.

Coffey & Margolis for Appellant.

Dion R. Holm, City Attorney, and Edward F. Dullea, Deputy City Attorney, for Respondent.

JONES, J. pro tem.—This is an action to recover damages for injuries sustained on account of the alleged negligence of the defendant. The trial court found that the defendant was not negligent, and judgment was entered accordingly. From this judgment the plaintiff has appealed.

On the date of the accident appellant was riding as a passenger on a municipally owned bus operated by the defendant. The route of the bus was westerly on Market Street and thence to the Richmond District in San Francisco. The accident occurred between 4:30 p.m. and 5 p.m. at the height of the commuter traffic. As the bus approached the intersection of Stockton Street an automobile was proceeding along directly in front of it. When this automobile stopped suddenly the bus was also suddenly stopped to avoid striking it. By this operation the appellant was thrown to the floor and injured.

Only two witnesses were called to testify upon the trial of the case. Appellant took the stand in her own behalf, and the defendant called as its only witness, Mrs. Lucille Rothblatt. Mrs. Rothblatt was also a passenger on the bus, and, at the time of the accident, she was standing directly behind the bus driver facing in the same direction. In her testimony she detailed what occurred as follows: "Q. What did you observe in relation to a car preceding the bus as it approached

Stockton Street there? A. Do you mean before the signal changed? Q. Just before, yes. A. There was a car traveling in front of the bus. Q. At what speed would you say it was traveling, your bus, now? A. About 20 miles an hour I should judge. Q. The automobile was tràveling that speed? A. About the same. Q. And the bus was traveling about the same speed? A. Approximately, yes. Q. Approximately how far behind the automobile was the bus? A. It was running in the normal line of traffic. 1 would say a few feet behind. Q. When you first observed the signal what was the condition of the signal? A. The car in front of the bus started to cross and the signal changed, and it stopped very abruptly and the bus driver was forced to stop or hit the car. Q. The automobile in front stopped very abruptly? A. The automobile in front stopped very abruptly. I thought he was going right through. The signal changed and I watched to see what would happen, and he slammed on the brakes and stopped very abruptly, and the bus driver was forced to stop. . . . Q. This car, the car ahead of the bus, as it approached the intersection, the intersection signal changed, is that correct? A. The signal changed. Q. The signal changed and this bus— this automobile then stopped, is that correct? A. It stopped. It started to stop suddenly, as some drivers decide they will make it, the last car over, then change his mind as the pedestrians step from the curb, and stop abruptly, and jammed on his brakes. . . . Q. And it was going along you would say at a pretty good speed? A. No, just normal, as any other bus I have ridden on that hour of night. Q. But you say it was following within a few feet? A. The normal line of traffic. Q. A few feet? A. Yes a few feet. Q. When this car ahead stopped the bus then stopped? A. To avoid hitting the car. Q. The car ahead stopped suddenly, is that correct? A. Yes. Q. And the bus itself stopped suddenly, is that correct? A. Yes. . . . Q. You noticed Mrs. Aboudara being thrown to the floor? A. That is right.''

█ It is obvious from the facts as detailed by this witness that the driver of the bus was confronted with the choice of either stopping the bus or striking the car in front. Whether in so stopping he acted in a manner which was reasonably prudent for the safety of his passengers was a question of fact for the trial court. The court below having answered the question in the affirmative, this court is bound by its determination. █ When, as is said in *James* v. *American Buslines*, 111 Cal.App.2d 273 [244 P.2d 503], "there is pre-

sented for review simply a question of fact from which reasonable minds might draw different conclusions this court is bound by the findings of the trier of fact."

It may be said in answer to the contention of appellant that the doctrine of res ipsa loquitur applies to the case that a complete explanation of the cause of the accident was given by the witness who directly observed its occurrence. This explanation proved satisfactory to the trial court as is evidenced by its finding that the defendant was not negligent.

"The inference of negligence, which the" trier of fact "may draw from an application of the doctrine of res ipsa loquitur is a proper case, is in the nature of indirect evidence, but the conclusion therefrom that negligence exists is not mandatory." (*Armstrong* v. *Pacific Greyhound Lines,* 74 Cal. App.2d 367, 373 [168 P.2d 457].) As is said in *James* v. *American Buslines,* 111 Cal.App.2d 273, 276 [244 P.2d 503], "In an action for personal injuries sustained by plaintiff while a passenger in defendant's bus, it is the sole province of the jury to determine from all the evidence whether plaintiff's prima facie case arising from the application of the doctrine of res ipsa loquitur is adequately met or balanced by defendant's showing of the conduct of the driver and the circumstances of the accident." There is a legion of authorities to the effect that where there is any substantial evidence, contradicted or uncontradicted, which will support a questioned finding of fact the reviewing court is bound by the finding and may not disturb it on appeal. (See *Haak* v. *Southern Cities Transit Co.,* 94 Cal.App.2d 262 [210 P.2d 522]; *Collas* v. *Pasadena City Lines, Inc.,* 89 Cal.App.2d 93 [200 P.2d 77]; *Armstrong* v. *Pacific Greyhound Lines,* 74 Cal.App.2d 367 [168 P.2d 457].) In *Crooks* v. *White,* 107 Cal.App. 304, 309 [290 P. 497], it is said that "even though all facts are admitted or uncontradicted, nevertheless, if it appears that either one of two inferences may reasonably be deduced from those facts, there still remains a question of fact to be determined by the jury, and that the verdict of the jury cannot be set aside by a reviewing court on the ground that it is not sustained by the evidence. In reviewing a question of this kind, all inferences, reasonably possible from the evidence, favorable to the prevailing party, must be indulged by this court. (*Anderson* v. *Los Angeles Transfer Co.,* 170 Cal. 66 [148 P. 212]; *Woodard* v. *Glenwood Lbr. Co.,* 171 Cal. 513 [153 P. 951]; *Hassell* v. *Bunge,* 167 Cal. 365 [139 P. 800]; *Mah See* v. *North American Acc. Ins. Co.,* 190 Cal. 421 [26

A.L.R. 123, 213 P. 42] ; *Wilbur* v. *Wilbur,* 197 Cal. 7 [239 P. 332].)''

Even though appellant testified to the contrary in some particulars, the testimony of Mrs. Rothblatt affords abundant support for the finding that the defendant was not negligent.

The judgment is affirmed.

Nourse, P. J., and Goodell, J., concurred.